TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 22-1101 |
| of | : | |
| | : | March 30, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| KARIM J. KENTFIELD | : | |
| Deputy Attorney General | : | |

SANDRIDGE PARTNERS, L.P. has applied to this office for leave to sue DAN BOSWELL, GABE COOPER, PHIL HANSEN, JIM RAZOR, DOMINIC SWEEN, MARK UNRUH, GEORGE WURZEL, JEOF WYRICK, and MICHAEL SULLIVAN in quo warranto to remove them from public office on the Board of Directors of the Tulare Lake Basin Water Storage District. The application asserts that the proposed defendants were appointed to and are serving on the Board in violation of multiple provisions of the Water Code.

We conclude that there are substantial issues of law and fact as to whether the proposed defendants are lawfully holding office. We further conclude that the public interest will be served by allowing the proposed quo warranto action to proceed. Consequently, the application for leave to sue is GRANTED.

**BACKGROUND**

The Tulare Lake Basin Water Storage District was established in 1926 under Water Code section 39000 et seq.[1] The District consists of thousands of acres of "highly

---

[1] See *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.* (1973) 410 U.S. 719,

1

22-1101

fertile farm land located in the Tulare Lake Basin."[2]  Like other water storage districts, it is authorized to "execute approved projects 'for the acquisition, appropriation, diversion, storage, conservation, and distribution of water.'"[3]

The District is governed by an eleven-member Board of Directors.  Each Director serves a four-year term.  Directors are elected at large, with voting limited to landowners within the District.[4]  One such landowner is the proposed relator here, Sandridge Partners, L.P., who now seeks to remove nine of the Board's current members.

The undisputed facts are as follows.  In October 2020, the District published a notice in two area newspapers.  The notice stated that an election would be held for all eleven Board seats on March 2, 2021.  It further stated that any ten or more voters in the District could file a petition to nominate candidates for the ballot.  The statutory deadline to nominate candidates was January 1, 2021.[5]

In December 2020, before the deadline had passed, nominating petitions were submitted for the following nine candidates:  Dan Boswell, Gabe Cooper, Phil Hansen, Jim Razor, Dominic Sween, Mark Unruh, George Wurzel, Jeof Wyrick, and Michael Sullivan (collectively, Defendants[6]).  Each petition represented that it was submitted on behalf of more than ten landowning voters in the District.  The voters themselves did not sign the petitions, however.  Instead, each petition was signed by three of the nominees: Hansen, Unruh, and Wurzel.  Hansen purported to sign each petition on behalf of eight District voters, while Unruh and Wurzel purported to sign on behalf of two voters each.[7]

On January 12, 2021, after the nominating deadline, the District's General Manager, Jacob Westra, issued a document to the Kings County Board of Supervisors. Sandridge refers to that document as the Election Certificate, and we follow that convention here as well.  The Election Certificate asked the Board of Supervisors to appoint the nine Defendants to the District's Board in lieu of an election because there

---

721, 734.

[2] *Id.* at p. 723.

[3] *Ibid.*, quoting Wat. Code, § 42200.

[4] Wat. Code, § 41000.

[5] See Wat. Code, § 41305.

[6] A quo warranto action has not yet been filed, so the nine individuals are currently proposed defendants.  Nonetheless, for brevity, we will refer to them here as the Defendants.

[7] The one exception was the petition to nominate Jim Razor, which Wurzel purported to sign on behalf of only one voter.

were only nine nominees for eleven open seats. The District's existing Board of Directors did not pass a resolution approving the Election Certificate or discuss the issue at any publicly noticed meeting. After Westra issued the Election Certificate, the March 2 election was not held as scheduled.

Instead, the Board of Supervisors placed the appointment issue on the agenda for its regular public meeting on March 9, 2021. It then appointed all nine Defendants to the District's Board of Directors at the meeting. Defendants assumed office on April 13, 2021.[8]

Sandridge now seeks our permission to sue all nine Defendants in quo warranto to remove them from office. Sandridge contends that several statutory requirements for nominating and appointing Defendants as directors were not satisfied. In opposition, Defendants contend that the statutory requirements were largely followed, that any defects are insufficient to justify Defendants' removal from office, and that the public interest weighs against authorizing a quo warranto lawsuit.

### ANALYSIS

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[9] Where, as here, a private party seeks to pursue a quo warranto action in superior court, that party (known in this context as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent to do so. In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[10] Here, the answer to all three questions is "yes," and we therefore grant leave to sue.

### 1. Availability of Quo Warranto Remedy

Section 803 of the Code of Civil Procedure authorizes an action in the nature of quo warranto to remove a person who unlawfully holds any public office.[11] Here,

---

[8] On June 8, 2021, the District appointed Ceil W. Howe, Jr. to serve as its tenth Director. Sandridge does not seek Howe's removal. The eleventh Board seat remains vacant.

[9] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[10] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[11] See 105 Ops.Cal.Atty.Gen. 65, 67 (2022); *Nicolopulos v. City of Lawndale*, *supra*, 91

Sandridge's argument, if accepted, would mean that Defendants are unlawfully holding public office on the District's Board of Directors, and Sandridge has made clear that it seeks to remove Defendants from office.[12] Quo warranto is therefore an available and appropriate remedy.[13]

## 2. Substantial Issues Regarding the Lawfulness of the Appointments

We next examine whether there are substantial issues of law or fact as to whether Defendants are lawfully holding public office. Sandridge contends that Defendants' nominations and appointments were legally defective in the three respects discussed below. As to each, we conclude that there are substantial issues warranting judicial resolution.[14]

### a. Nominating Petitions

To begin with, Sandridge challenges the validity of the nine petitions submitted to nominate Defendants for office. Under Water Code section 41305, "any 10 or more voters" in a water storage district may "file with the board a petition" requesting that a candidate be placed on the ballot for a board election. A voter is qualified to make such a request by holding "title to land" within the district.[15] Here, each nominating petition was purportedly signed on behalf of eleven or twelve District voters.[16] But Sandridge contends that fewer than ten signatures were valid, because Defendant Phil Hansen lacked legal authorization to sign for seven of the voters he purported to represent.[17]

---

Cal.App.4th at p. 1225; 103 Ops.Cal.Atty.Gen. 33, 35-36 (2020).

[12] See 85 Ops.Cal.Atty.Gen. 60, 61 (2002) (water district board of directors is a public office).

[13] To the extent that Sandridge also seeks any other form of declaratory or injunctive relief, it may not do so in quo warranto. Removal from office, and related monetary penalties, are the only authorized quo warranto remedies where the lawfulness of holding a public office is challenged. (See Code Civ. Proc., §§ 803, 807, 809.)

[14] We do not detail every challenge raised by Sandridge, as we conclude that the issues described herein are sufficient to grant its application.

[15] Wat. Code, § 41000.

[16] See *supra* p. 2 & n.7.

[17] Sandridge also challenges the authority of Defendants Mark Unruh and George Wurzel to sign on behalf of the four voters they collectively purported to represent. We need not evaluate those challenges here because they would not affect our determination that a substantial question exists regarding the validity of the nominating petitions. As

4

In support, Sandridge cites two provisions of the Water Code concerning when an individual may act on a voter's behalf. First, under section 41004, a "corporation holding title to land" in the district "is entitled to vote through any officer or agent authorized in writing under the seal of the corporation." Second, section 41005 provides that "[n]o person shall vote by proxy unless his authority to cast such vote is evidenced by an instrument acknowledged and filed with the board of election." Sandridge maintains that Hansen lacked authorization, under either provision, to sign on behalf of the seven voters he purported to represent.

Defendants respond with an affidavit from Hansen, in which he states that he "was authorized" to sign the petition on the voters' behalf.[18] But Defendants fail to explain how the affidavit satisfies the requirements of section 41004 or 41005. For example, the affidavit does not state that any of the seven voters is a "corporation" that duly authorized Hansen to vote on its behalf as its "officer or agent."[19] Nor does the affidavit specify that Hansen's authorization was "evidenced by an instrument acknowledged and filed with the board of election."[20] And Defendants fail to identify any other statutory provision under which Hansen could have been authorized. Accordingly, we find a substantial issue as to whether Hansen was legally authorized to sign on behalf of the seven voters, and therefore as to whether each nominating petition was filed on behalf of the required ten voters.[21]

### b. *Director Qualifications*

Next, Sandridge argues that six of the Defendants do not satisfy the eligibility requirements to serve as directors. Water Code section 40307 states that, "to be nominated and eligible for the office of director, a candidate shall be a holder of title within the district."[22] "If a holder of title to land is not a natural person, the holder of title

---

explained below, we find a substantial question as to whether Hansen lacked legal authorization to sign on behalf of seven of the voters he purported to represent. And without those seven voters, the petitions would fail to satisfy the ten-voter requirement—whether Unruh and Wurzel were properly authorized or not. In any event, issues regarding their authority to sign may be raised in the ensuing litigation.

[18] Declaration of Phil Hansen in Support of Opposition to Application of Sandridge Partners, L.P., for Leave to Sue in Quo Warranto, ¶ 2. Hansen also states that he signed an eighth time on his own behalf, as a landowner in the District. (*Ibid.*)

[19] Wat. Code, § 41004.

[20] Wat. Code, § 41005.

[21] See Wat. Code, § 41305.

[22] Wat. Code, § 40307.

5

to land may designate . . . representatives to be eligible to be elected or appointed as a director by filing with the district written evidence of that designation."[23]

Sandridge first contends that Defendant Michael Sullivan does not satisfy the eligibility requirements because he is neither a District landowner nor a properly authorized representative. In response, Defendants have submitted a declaration from Sullivan, in which he states that he is authorized to serve as the Board representative of his employer, a landowner in the District.[24] But the affidavit provides no evidence that the landowner "fil[ed] with the district written evidence" designating Sullivan as its representative, as required by section 40307 of the Water Code. We therefore find a substantial question as to Sullivan's eligibility.

We reach the same conclusion as to Defendants Gabe Cooper, Jim Razor, Mark Unruh, George Wurzel, and Jeof Wyrick. Defendants submitted a letter from a corporate landowner in the District stating that these five Defendants are its authorized representatives.[25] But as Sandridge points out in reply, Defendants fail to indicate whether the letter was "fil[ed] with the district," as section 40307 specifies. The letter is also dated over a year and a half after the appointments, and Defendants cite no authority addressing whether non-compliance with section 40307 can be cured after the fact.

### c. *Appointment Process*

Finally, Sandridge challenges the process by which Defendants were appointed to office. Under Water Code section 41307, if there is only one nominee for an available Board of Directors seat after the nomination deadline has passed, then "*the board, in its discretion and by resolution*, may . . . request the board of supervisors to appoint to that office the person nominated" in lieu of an election.[26]

Here, there is no evidence that the District's Board of Directors passed a "resolution" requesting Defendants' appointments, or took any other action to exercise its

---

[23] *Ibid.*

[24] Declaration of Michael Sullivan in Support of Opposition to Application of Sandridge Partners, L.P., for Leave to Sue in Quo Warranto, ¶¶ 1-2.

[25] See Declaration of Mark Unruh in Support of Opposition to Application of Sandridge Partners, L.P., for Leave to Sue in Quo Warranto, Exh. A. The letter states that Defendants Dan Boswell and Dominic Sween are authorized to serve as the company's representatives as well. Sandridge does not challenge the eligibility of Boswell or Sween.

[26] Wat. Code, § 41307, italics added. Upon receiving such a request, "the board of supervisors shall make that appointment." (*Ibid.*)

"discretion."[27]  Rather, the District's General Manager, Jacob Westra, made the request by issuing the Election Certificate.  Notably, Defendants do not contend that this process complied with section 41307.

Instead, Defendants argue that Westra's issuance of the Election Certificate followed a different appointment process described in Elections Code section 10515.  In circumstances where section 10515 applies, it authorizes an elections officer to request appointment of candidates in lieu of an election by "submit[ting] a certificate" to the supervising entity.[28]  But Defendants cite no authority indicating that Elections Code section 10515 applies here—i.e., that it governs elections for water storage districts established under Water Code section 39000 et seq., despite the more specific appointment procedures provided in Water Code section 41307.[29]

For these reasons, we conclude that Sandridge has raised substantial issues as to whether Defendants' nominations and appointments complied with all statutory requirements.  To the extent Defendants assert that they may remain in office notwithstanding any such legal defects, they cite no authority suggesting that full statutory compliance is optional.  Accordingly, we find a substantial question as to whether the alleged legal shortcomings here—either alone or in combination—are a basis to remove Defendants from office.

## 3.  Public Interest in Favor of Authorizing Suit

Finally, we believe that the public interest is served by authorizing this quo warranto suit.  Generally, the existence of a substantial question of law or fact presents a sufficient "public purpose" to permit an action in quo warranto, absent countervailing circumstances.[30]  Defendants allege numerous countervailing circumstances here, but we are not persuaded.

To begin with, we do not agree with Defendants' assertion that Sandridge unreasonably delayed bringing this quo warranto application.  Although Sandridge filed the application a year and a half after Defendants assumed office, it spent most of that time seeking documents necessary to assess the District's election procedures.  Sandridge states that it issued Public Records Act requests to the District in early 2021, yet the

---

[27] *Ibid*.

[28] Elec. Code, § 10515, subd. (a).

[29] Compare, e.g., Wat. Code, § 35100 (Elections Code section 10515 governs elections for water districts created under Water Code section 34000 et seq.); see 101 Ops.Cal.Atty.Gen. 49 (2018).

[30] 98 Ops.Cal.Atty.Gen. 94, 101 (2015); 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

22-1101

District did not provide all responsive records until a year later—after Sandridge sued to compel production.

Relatedly, Defendants emphasize that their four-year terms of office are nearing the halfway mark, and that the process for the next election will begin in the fall of 2024. But that leaves considerable time for a court to resolve this matter.

Defendants further contend that their removal would be detrimental to the District's operations because it would leave only one member on the Board.[31] As in past opinions, we "acknowledge Defendants' practical concern."[32] But "we view it as a factor for the court to consider in fashioning any remedy, not as a bar to granting leave to sue."[33]

Nor do we find it relevant that Sandridge wishes to challenge other aspects of the District's election procedures (such as the number of votes assigned to each landowner). While any such disputes are outside the scope of a quo warranto claim, they do not diminish the public interest in resolving whether Defendants are unlawfully holding office.

Finally, Defendants' arguments concerning Sandridge's motives do not alter our conclusion. According to Defendants, Sandridge seeks to invalidate their appointments so that it can obtain its own representation on the Board in a new election—after Sandridge failed to nominate any candidates during the previous cycle. But whether Sandridge stands to benefit from Defendants' removal or not, the public interest will be served by resolving whether Defendants are validly holding office.[34]

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[31] Defendants express particular concern about the Board's management of pending litigation—including two Superior Court proceedings in which the District and Sandridge are adverse parties.

[32] 105 Ops.Cal.Atty.Gen. 101, 109 (2022).

[33] *Ibid.*

[34] See 75 Ops.Cal.Atty.Gen. 112, 116 (1992) ("We normally do not attempt to assess the motivation of individual relators"); 95 Ops.Cal.Atty.Gen. 67, 75, fn. 39 (2012) (same).

22-1101